UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAHREME JOEFIELD, EARL WILLIAMS, DUKE SCATLIFFE, and HASHEEM SCATLIFFE, on behalf of themselves and all others similarly situated, <br><br>                 Plaintiffs, <br><br>       -against- <br><br> SEKO WORLDWIDE LLC, d/b/a SEKO LOGISTICS, <br><br>                 Defendant. | No. 22-cv-6822-LB |

**DECLARATION OF SCOTT SIMPSON IN SUPPORT OF PLAINTIFFS' CONSENT MOTION TO FINALLY APPROVE SETTLEMENT AGREEMENT, SERVICE AWARDS, SETTLEMENT ADMINISTRATOR COSTS, AND ATTORNEYS' FEES AND EXPENSES**

I, Scott Simpson, upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct:

1.      I am admitted to practice law in the State of New York and a member in good standing in this Judicial District of the United States Federal Courts. I am a partner at the law firm of Menken Simpson & Rozger LLP in New York, New York, and, along with my colleagues Raya F. Saksouk and Bruce E. Menken, I serve as co-counsel to Plaintiffs Jahreme Joefield, Earl Williams, Duke Scatliffe, and Hasheem Scatliffe ("Joefield Plaintiffs") in the above-captioned lawsuit against SEKO Worldwide LLC, d/b/a SEKO Logistics ("SEKO," "Defendant," or "the company").

2.      I am providing this Declaration in support of Plaintiffs' Consent Motion to Finally Approve the Settlement Agreement, Incentive Awards, Settlement Administrator Costs, and Attorneys' Fees and Costs.

1

3.      Annexed hereto as **Exhibit 1** is a true and accurate copy of the executed Settlement Agreement.

4.      Annexed hereto as **Exhibit 2** is a true and accurate copy of the parties' Proposed Order granting the relief sought herein.

5.      Annexed hereto as **Exhibit 3** is a true and accurate summary of litigation expenses incurred by my firm in this matter.

6.      Annexed hereto as **Exhibit 4** is a true and accurate copy of my law firm's billing records in this matter through March 10, 2025.

7.      Annexed hereto as **Exhibit 5** are true and accurate copies of retainer agreements (with client names redacted) reflecting my $600 regular hourly rate.

8.      Annexed hereto as **Exhibit 6** are true and accurate copies of retainer agreements (with client names redacted) reflecting the $750 regular hourly rate of Bruce E. Menken.

**RELEVANT FACTS AND PROCEDURAL POSTURE OF THE CASE**

9.      The proposed settlement involves the resolution of two consolidated cases pending in this district that contain nearly identical factual underpinnings, and therefore involve the same questions of law and fact. The original actions were: *Paisley, et al. v. Seko Worldwide LLC*, 22-cv-04301 (LB) (the "*Paisley* action"), and *Joefield v. SEKO Worldwide LLC, d/b/a SEKO Logistics*, 22-cv-06822 (RER) (LB) (the "*Joefield* action").

10.     The *Joefield* and *Paisley* cases were consolidated under the *Joefield* docket via text order on July 10, 2024.

11.     Plaintiffs in both cases are current or former warehouse workers who performed work such as loading and unloading trucks, loading and unloading freight, and breaking down and arranging shipments in the SEKO warehouses located at 150-15 183rd St, 147-04 183rd St., and

18454 149th Avenue in Queens, NY.[1] Jahreme Joefield, and possibly one or two other class members, operated forklifts in order to load and unload boxes. *See, e.g.,* Second Amended Compl., ¶¶ 21, 34, 77, 88. This falls squarely within the work performed by class members and set forth in the class definition, which can be summarized as breaking down and handling freight. *Id.*, ¶¶ 32, 34, 70, 88. While Mr. Paisley is described as a "clerk" in the *Paisley* complaint, he performed the same type of manual labor sorting, handling, loading, and unloading freight.

12.    Plaintiffs bring this consolidated action on behalf of themselves and all similarly situated current and former SEKO warehouse workers ("Collective Members") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by SEKO Worldwide LLC, an international "supply chain solutions" company specializing in transportation, logistics, forwarding, and warehousing, that have deprived Plaintiffs and others similarly situated of their lawful wages.

13.    Plaintiffs also bring this action under Fed. R. Civ. P. 23 on behalf of themselves and a class of as many as 274 warehouse workers (168 of whom received Notice) employed by Defendant between January 1, 2020 and December 31, 2022 ("Class Members") to redress the systematic failure of Defendant to pay its employees the proper minimum, overtime and spread-of-hour wages in compliance with the New York Labor Law ("N.Y.L.L."), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*

14.    Defendant SEKO also allegedly violated the N.Y.L.L., Article 6, §§ 190 *et seq.*, by failing to provide Plaintiffs and Class Members with legally sufficient written wage statements.

---

[1] The warehouses at 150-15 183rd St. and 18454 149th Ave. are in the same complex and adjacent to one another. The only warehouse currently operating is 150-15 183rd St.

15.     In addition to compensatory damages, Plaintiffs seek attorneys' fees, costs, prejudgment interest, liquidated damages, and injunctive and declaratory relief on behalf of themselves and the Class.

## The *Paisley* Action

16.     The *Paisley* action was originally filed on July 21, 2022. PECF 1.[2] The *Paisley* Plaintiffs are represented by Lina Stillman, Esq. of Stillman Legal, P.C. ("LS"). *Id*.

17.     The parties in the separate *Paisley* action agreed to mediation on or about November 25, 2022 and Magistrate Judge Lois A. Bloom referred the case to mediation on November 28, 2022. PECF 19. As part of the mediation process, SL expended time and resources calculating class-wide damages.

18.     Following a mediation session on July 12, 2023 (PECF 37), the parties in *Paisley* reached a settlement on a class-wide basis. The structure of the proposed settlement was a claims-made, common fund settlement. The common fund was $289,000.00, which included $50,000.00 in attorneys' fees and $27,932.00 in service awards split between Shavouy Paisley and opt-in Plaintiff Kyle Jemmott. The settlement administrator fees and employer payroll taxes would not come out of the common fund and would be paid separately by Defendant. PECF 48-1.

19.     Had the settlement been approved, I calculate that the net settlement to the class would have been approximately $211,068.00. PECF 48-1.

20.     On June 9, 2023, Kyle Jemmott filed a purported consent to become an opt-in Plaintiff in the *Paisley* action. PECF 36. On July 23, 2024, Jemmott filed an amended consent to become an opt-in in the consolidated action. PECF 71.

---

[2] To avoid confusion, references to the *Paisley* docket will be cited as "PECF" and references to the *Joefield* docket will be cited as "ECF."

**The *Joefield* Litigation and Reaction to the Proposed *Paisley* Settlement**

21.     The *Joefield* action was originally filed on November 8, 2022. ECF 1. The case was originally styled as a Rule 23 Class Action under the NYLL. The *Joefield* Plaintiffs are represented by my firm, Menken Simpson & Rozger LLP ("MSR").

22.     Prior to filing the *Joefield* case in November 2022, my firm conducted an investigation into the case, which included interviewing Joefield, collecting documents showing that Defendant failed to pay lawful wages, and assessing whether there were potentially any other companies that could be liable.

23.     Following the filing of the *Joefield* case, MSR conducted further investigation into the claim, including interviewing at least 8 other workers from the relevant warehouses (not including those who became Plaintiffs).

24.     On January 13, 2023, the *Joefield* Plaintiffs filed an Amended Class Action Complaint adding Earl Williams, Duke Scatliffe, and Hasheem Scatliffe as Named Plaintiffs in the *Joefield* action. ECF 9.

25.     In March and April of 2023, Magistrate Judge Taryn A. Merkl conducted an inquiry into Defendant's corporate disclosure statements for the purpose of determining whether the Court had diversity jurisdiction. *See* Text Order of March 1, 2023. (In the original Joefield Complaint and First Amended Complaint, the Joefield Plaintiffs did not raise FLSA claims.) The parties then engaged in motion practice over whether the Court had proper jurisdiction. *See* ECF 34-36. The motions were fully briefed on April 19, 2023. ECF 36.

26.     While that motion was pending before Magistrate Judge Merkl, the *Paisley* plaintiffs filed their motion for preliminary approval of a class action settlement. Upon seeing the motion, I reached out to Defendant's counsel who agreed to provide the time and pay records upon

5

which the proposed settlement was based. The *Joefield* plaintiffs entered an appearance as interested parties in the *Paisley* case.

27.    MSR conducted its own independent damages calculations, which showed substantially more class-wide damages than were assumed in the *Paisley* settlement. (Specifically, *Paisley*'s counsel did not include minimum wage damages in her calculations and underestimated overtime damages.). The *Joefield* plaintiffs then informed all parties and the Court that they would oppose the settlement.

28.    The Court held a conference with LS, MSR, and SEKO's counsel, with Mr. Joefield in attendance, on November 30, 2023, at which the Court marked the pending preliminary approval motion as withdrawn without prejudice. *See* Text Order of November 30, 2023.

29.    During this period, LS worked collaboratively with MSR with the common goal of obtaining robust relief for the class.

### The Parties Engage in Global Settlement Negotiations

30.    Shortly after the November 30, 2023 conference, both the *Paisley* and *Joefield* Plaintiffs, and SEKO, agreed to return to the negotiating table. On December 21, 2023, the Plaintiffs and Defendant informed Magistrate Judge Bloom that they agreed to engage in further settlement negotiations in an attempt to reach a global settlement. ECF 41. Prior to the commencement of negotiations, the *Joefield* Plaintiffs then filed, with the consent of Defendant, a Second Amended Complaint on December 29, 2023 (ECF 42), adding claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., thus giving the Court subject matter jurisdiction over the *Joefield* action pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over the *Joefield* Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

31.     The parties retained an experienced JAMS mediator, Lester Levy, Esq., to serve as the mediator in this case. Mr. Levy is a founding member of JAMS who has been an Alternative Dispute Resolution professional for more than 30 years. He has handled dozens of class action matters and has extensive experience in employment matters, including serving as a Settlement Master in a national wage and hour class action brought by 200,000 employees against the United States Department of Treasury. More information about Mr. Levy is available at https://www.jamsadr.com/lester-levy/.

32.     Prior to the first in-person mediation session, MSR continued its investigation of the claims. On February 6, 2024, MSR served third-party Defendant American Freight International ("AFI") with discovery requests. In response, AFI produced documents critical to supporting Plaintiffs' contention that SEKO was their employer. On March 26, 2024, MSR attorney Scott Simpson interviewed AFI's owner and sole operator, Mr. Langfan Ruan, over Zoom with AFI's counsel and a Mandarin interpreter present. In that meeting, Mr. Ruan informally shared additional information that MSR was able to use in its mediation statement to support SEKO's liability.

33.     The parties held two in-person mediation sessions at JAMS, on April 9 and June 17, 2024. Prior to the April 9 session, the parties exchanged substantial mediation briefs. Named Plaintiffs Jahreme Joefield and Shavouy Paisley participated in the April 9 session and assisted Plaintiffs' counsel by providing relevant factual information. Following the April 9 session, MSR determined that further damages analysis was warranted to come up with a more precise calculation. The parties agreed to share their respective calculations and meet and confer prior to the June 17 session. The parties exchanged their respective damages calculations, along with

information showing each party's methodology, on May 15, 2024. The parties then exchanged updated calculations between May 28 and May 30.

34.     The parties' damages calculations in both the *Joefield* and *Paisley* actions were based on data collected by Defendant and/or AFI. As confirmed by Plaintiffs, all class members were required to punch in and out of work using a timeclock during the relevant time period. Class members would then submit their timecards to Defendant and/or AFI, who would digitize them by entering the values into a Microsoft Excel spreadsheet, with a different spreadsheet for each person for every two-week period. In other words, a single spreadsheet would contain two weeks of data for the person identified and would typically include: (a) for each day, the time(s) he or she clocked in, (b) the time(s) he or she clocked out, (c) the total number of hours worked during each week, and (d) the class member's hourly rate and gross wages paid for the two-week period. MSR was able to obtain a sampling of timecards and compare them with their corresponding spreadsheets. Based on our review of these documents, my office determined that those spreadsheets were consistent with the timecards, which is evidence that the time and pay data upon which the parties relied is accurate.

35.     The parties met and conferred on May 31, 2024, over Zoom to assess areas of agreement and disagreement regarding the damages calculations for each party. During this meeting, the parties concluded that the differences in the parties' lost wages calculations were due to a factual dispute concerning the treatment of lunch breaks. Defendant's lost wages calculations totaled $431,173.09. MSR's lost wages calculations totaled $892,286.88. However, MSR's calculations added back, on average, one unpaid hour each shift based on the assumption that every class member worked through every recorded lunch period—an allegation that Defendant denied. This assumption accounted for the difference in the parties' lost wages calculations.

36.     On June 17, 2024, the parties engaged in a full-day mediation session at the JAMS offices in Manhattan. Jahreme Joefield was present for the entire full-day session, providing important insights and factual information. At the conclusion of the session, Mr. Levy made a Mediator's Proposal of a $1,295,000.00 common fund settlement with no reverter, which the parties accepted on June 21, 2024.

37.     The settlement provides robust relief for the putative class. After accounting for attorneys' fees and costs, service awards for the named Plaintiffs and opt-in Plaintiff, a modest reserve fund, and projected settlement administration costs, some $755,000 will be distributed to the class members. Although the amount of lost wages is in dispute, given that the parties' calculations average out to roughly $661,000.00, the class and collective are likely to receive more than 100 cents on the dollar for their lost wages.

38.     Following the agreement to a settlement in principle, MSR drafted the settlement agreement and accompanying documents necessary to effectuate preliminary approval.

39.     During settlement negotiations, Defendant disclosed to Plaintiffs' counsel that it was in possession of limited contact information for the class members. In anticipation of this problem, both Defendant's counsel, Charles DeVore, and undersigned Plaintiffs' counsel, reached out to several different settlement administrators for advice on how to reach those class members for whom there would be no contact information.

40.     In general, these administrators stated that short of an online campaign or public advertising which we were advised would be expensive and likely fruitless, the parties' best chance at populating the class list with contact information would be for the administrator to run searches and skip traces on each name.

41.     The parties ultimately selected Simpluris as the claims administrator because i) Simpluris has extensive experience in administering wage and hour class actions (*see* https://www.simpluris.com/representative-cases/); ii) Defense counsel has used Simpluris before and recommended the company; and iii) Simpluris offered the most competitive price estimate of the three administrators contacted by the parties.

1. Populating the Class List

42.     The parties then turned their focus to populating the class list with contact information. On August 5, 2024, SEKO produced a class list containing 294 names. The list contained many duplicates and misspellings, and many individuals only had first names, last names, or nicknames (e.g., "Ben 2," "Alex B," "Shuki"). The final class list, without duplicates, ended up containing approximately 274 names. The class list was ultimately refined as a result of the parties' efforts outlined below. However, 24 individuals on the list still had only one name and no surname.

43.     SEKO's records yielded contact information for roughly 30 prospective class members, which SEKO produced on August 5. On August 6, I forwarded the class list to Edwin Gonzalez, MSR's Office Manager who has been with the firm for over 12 years, and instructed Mr. Gonzalez (i) to prepare a Microsoft Excel spreadsheet containing just the class members for whom Defendant could not provide any contact information and (ii) to forward that spreadsheet to Jahreme Joefield with instructions to provide us with contact information for as many individuals as possible. On August 12, Mr. Joefield provided contact information for 45 class members. Additionally, between August 30 and September 6, Mr. Gonzalez spoke to three class members with long tenures at SEKO and enlisted their help in obtaining contact information for the remaining individuals (they were unable to provide any).

44.     On September 5, 2024, I was able to get in contact by phone with Kareem White, a former SEKO supervisor who worked at the warehouses at issue. Mr. White informed undersigned counsel that there was a box in his former office at the warehouse containing information about prospective class members. After undersigned counsel informed Mr. DeVore of this development, Mr. DeVore promptly contacted Mr. White's successor at the warehouse who indeed located a box containing contact information for 18 prospective class members for whom the parties previously had no contact information. Thereafter Mr. DeVore reported that he had a conversation with the manager to confirm that a complete search had been conducted and no further contact information for prospective class members was found.

45.     On September 13, 2024, Plaintiffs submitted their first Motion for Preliminary Approval. ECF 66-69. On October 22, 2024, the Court held a conference with the parties to address the Court's concerns with certain sections of the settlement agreement, notice, and the memorandum of law. At the end of the conference, the parties consented to the motion being withdrawn without prejudice. The Court ordered the parties to file a revised motion no later than November 26, 2024.

46.     MSR then continued its efforts to track down contact information for the putative class members for whom Defendant could not provide any contact information. These efforts are detailed in the Declaration of Edwin Gonzalez. In November 2024, Mr. Gonzalez spoke to more than 65 class members to (i) provide them with the names of the class members lacking contact information, and (ii) to obtain their mailing addresses. As a result of Mr. Gonzalez's efforts, MSR was able to obtain contact information for an additional 23 people for whom Defendant could only produce a name.

47.    Additionally, on October 24, undersigned counsel asked Simpluris to run searches on the remaining class members for whom we had no contact information. Simpluris advised the parties on November 1 that using names alone produces too many results for their system to generate options, and that they would need one more identifier, such as a zip code or phone number (neither of which the parties had for these class members). Based on Mr. Gonzalez's conversations with dozens of class members, he noted that most of them live in Queens, with a particular presence in Southern Queens. On November 8, undersigned counsel provided a list of zip codes in Queens to narrow the searches of class member names. Simpluris was able to obtain an additional 67 addresses using this information.

2.    Preliminary Approval Is Granted and Notice Is Disseminated

48.    On November 26, 2024, the Named Plaintiffs, on behalf of the Class, submitted an Unopposed Motion for Preliminary Approval of the Settlement, the scheduling of a final fairness hearing, and related relief, including appointment of Plaintiffs' counsel as Class Counsel and approval of the proposed Notices. ECF 70. The Court granted the motion on December 13, 2024, and set a final approval hearing for April 8, 2025, to address "(a) whether the proposed Settlement Agreement should be finally approved as fair, reasonable, and adequate; (b) plaintiffs' counsel's application for attorney's fees and costs; and (c) plaintiffs' application for service payments." ECF 78.

49.    On December 23, 2024, notice was distributed to the 168 class members for whom Simpluris had either a phone number, email address or mailing address. *See* Romo Decl. ¶ 13. The notice was sent electronically via email to 70 class members and via text message to 108 class members. *Id.*, ¶¶ 9-12. The notice was sent by first-class USPS mail to 146 class members.[3] *Id.*

---

[3] Defendants provided notice of the Settlement Agreement as required under the Class Action Fairness Act (28 U.S.C. § 1715) and as memorialized in Section 2.3(F) of the Settlement Agreement. Plaintiffs filed their Motion for

50.    On December 27, Simpluris sent the parties its first "Weekly Report." The report showed that no electronic FLSA consent/opt-in forms had been received by Simpluris. On January 2, 2025, undersigned counsel contacted Simpluris and requested that it investigate and ensure that the electronic FLSA opt-in form was working properly. On January 3, Simpluris informed the parties that due to a "configuration error" by Simpluris, any FLSA opt-in forms submitted until that date were lost, not recoverable, and Simpluris had no way of determining which individuals submitted forms. Simpluris stated that it had "identified the root cause and taken corrective action to resolve the issue" and that it had "also implemented additional checks to ensure similar problems do not arise in the future."

51.    On January 6, Plaintiffs' counsel then wrote the Court proposing a supplemental notice. ECF 79. The Court held a telephonic status conference with all parties on January 7 in which the Court recommended two additional steps to "remedy the loss of FLSA opt-in forms submitted online between December 23, 2024 and January 3, 2025." Text order of January 7, 2025. At the direction of counsel, Simpluris promptly revised the website, and sent supplemental notice via mail to 75 class members, via email to 65 class members, and via text message to 101 class members. Romo Decl. ¶¶ 14-18.

52.    On January 15, 2025, Defendant provided Plaintiffs with photographic evidence that three copies of the Poster Notice had been placed on the walls at the SEKO warehouse. One was posted in each of the warehouse lunchrooms, and one was posted above the punch clock. The undersigned believed the Posters looked small, and requested that SEKO re-print the Posters at the

---

Preliminary Approval on November 26. The Court held a telephonic hearing on the Motion on December 3 and issued an order requiring the parties to revise and resubmit the Class Notice by December 10.  The parties submitted the revised Notice in accordance with the Court's instruction on December 10.  Defendant thereafter timely served the Class Action Fairness Act ("CAFA") notice, with the final Class Notice and the other required exhibits thereto, in accordance with 28 U.S.C. § 1715, on December 10.

size specifications required by the settlement agreement. *See* Agreement § 1.24. On January 16, 2025, SEKO informed Class Counsel that the issue had been fixed and provided photographic evidence showing the larger Posters hanging on the walls of each lunchroom and at the entrance to the warehouse within close proximity to the punch clock used by all warehouse employees.

53.    Meanwhile, MSR continued to communicate with class members and either directly assist them or connect them with Simpluris. Between December 10, 2024, and March 11, 2025, Mr. Gonzalez reached out to approximately 80 class members and spoke with approximately 49 class members (or family members of class members) to answer their questions about the settlement and/or follow up with them on completing their FLSA Consent Forms. *See* Gonzalez Decl. ¶ 20.

54.    On February 28, 2025, one week after the deadline for opting out or objecting to the settlement, Simpluris sent the parties its final "Weekly Report" summarizing the responses from class members. No class members opted out of the settlement or filed any objections. Additionally, out of 168 total class members who received notice, 64 submitted FLSA Consent Forms either by mail or online using the settlement website. All 64 were deemed valid by Simpluris. Romo Decl. ¶¶ 20-23.

### Final Approval of the Settlement is Warranted

55.    I believe this settlement is procedurally fair, our representation was adequate and the settlement was the product of an arm's length negotiation.

56.    Here, after a prior settlement was reached that counsel for the *Joefield* plaintiffs, MSR, ultimately concluded was not fair to the class, MSR worked diligently to identify the potential lost wages accrued by the class in an effort to obtain a settlement over quadruple the size of the *Paisley* settlement.

14

57.    Moreover, *Paisley*'s counsel, Stillman Legal, P.C., upon being contacted by MSR, acted in the best interests of the class members by withdrawing the original motion for preliminary approval and working collaboratively with MSR prior to and throughout the second negotiation.

58.    MSR leveraged its substantial class action wage and hour experience (as set forth in ¶¶ 75-99, *infra*) to take the lead on negotiating an excellent settlement for the class.

59.    Ultimately, this settlement was reached between experienced counsel negotiating at arm's length after a robust investigation of Plaintiffs' claims, informal discovery consisting of thousands of pages of time and pay records and other documents, and two in-person mediation sessions conducted by an experienced JAMS mediator, Lester J. Levy.

60.    The settlement is also adequate in light of the attendant "costs, risks, and delay of trial and appeal." Fed R. Civ. P. 23(e)(2)(C)(i).

61.    I believe the settlement is also substantively fair under the *Grinnell* factors.

62.    By reaching a settlement, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Class Members. This case is undoubtedly complex, as it involves some 274 potential class members (168 of whom received Notice), claims under both state and federal law, a sophisticated Defendant, and several legal issues poised to be litigated.

63.    Extensive class-wide discovery would be required to establish liability and damages and to support Plaintiffs' class certification motion. This discovery would include both electronic and paper discovery related to Defendant's pay records; electronic discovery into Defendant's internal communications about the pay policies at issue and its external communications with American Freight International ("AFI") (one can envision at least 10 custodians that Plaintiffs could name for such an ESI search); and, finally, depositions of Class Members, Defendant's corporate representatives and employees, and representatives from AFI.

64. After completing discovery, the parties would likely move for summary judgment on the merits of the claims and a trial would most likely be necessary, with the result likely to be appealed. This settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner.

65. Discovery has also advanced far enough to allow the parties to resolve the case responsibly. Defendant has produced thousands of pages of pay and time records that would have likely constituted a substantial amount of document discovery. Although no formal depositions were taken, MSR took an informal deposition of AFI's principal and also received a tranche of documents from AFI in response to Plaintiffs' formal discovery requests. Those documents, which included extensive communications between SEKO and AFI, shed light on the relationship between SEKO and AFI and proved critical during settlement negotiations. Moreover, MSR engaged in an extensive investigation of claims, obtaining information from witnesses, potential class members (including video and audio recordings), legal research revealing prior legal conclusions concerning whether SEKO was the "employer" of these warehouse workers, photographs of the SEKO warehouse, as well as documents from Plaintiffs corroborating their wage claims.

66. Meanwhile, continuing this litigation would have its risks for Plaintiffs and the putative class. While Plaintiffs believe their case is strong, establishing liability would require significant factual development and favorable legal outcomes, which are all inherently uncertain.

67. Plaintiffs would have to rebut the merits of Defendant's anticipated defenses, including that SEKO was not the employer and that Class Members cannot sustain Article III standing for their Wage Theft Prevention Act Claims because they will not be able to show "injury in fact." Additionally, the parties are sharply divided on the amount of lost wages suffered by the

class. While Plaintiffs believe they can prevail on these issues, the proposed settlement alleviates these uncertainties and warrants final approval.

68.    Additionally, the settlement fund is substantial even considering the best possible estimated recovery. By MSR's estimation, depending on how the disputed lunch break damages were calculated, the reasonable recoverable damages range between approximately 2.1 and 3 million dollars. The fund represents an approximately 43%-62% payment of the reasonably recoverable damages (including liquidated and NYLL § 195 damages). However, if Defendants were successful in knocking out the lunch break compensation and Plaintiffs' claims under NYLL § 195 for lack of Article III standing, the fund would constitute approximately 300% of class-wide damages of $431,173.09 (without liquidated damages), and 150% of class-wide damages if liquidated damages were included.[4]

69.    While the *pro rata* calculation has not been completed by the settlement administrator, Class Counsel conservatively and roughly estimates based on the data in its possession that, if everyone in the class opted-in and cashed their checks—which is unlikely, considering Defendant's incomplete recordkeeping—more than 50 class members would receive an initial distribution of over $5,000 and more than 20 would receive an award of over $10,000.00. Assuming the settlement is split between the 168 individuals who received notice (a more likely outcome), and all 168 individuals opt in by the deadline, the average payment in the initial distribution per class member would be approximately $4,493.38.

70.    Finally, the Class Notice program fully complied with due process and Rule 23(c)(2)(B) requirements. The Notice is written in plain English, with translation information and a phone number at the top of the first page for any Class Members who spoke Spanish, Mandarin,

---

[4] Defendant calculated $431,173 in alleged unpaid wages; double that number is $862,346. The above percentages were calculated by dividing the settlement fund amount of $1.295 million by each number.

or another language. It was formatted to be as clear as possible. *See* Romo Decl., Ex. A. The Notice described the litigation and terms of the settlement, including the binding effect of a class judgment; defined the parameters of the preliminarily certified class; informed the Class Members about how to participate, object, or opt-out of the settlement; informed them of their right to enter an appearance through counsel of their choosing; informed them how to consent to joining the FLSA collective; provided details on the allocation of attorneys' fees and costs, and stated the time and place of the final approval hearing. *Id*.

**Plaintiffs Provided Substantial Assistance in Prosecuting the Case, Thus Justifying the Requested Service Awards**

71.     The service awards to the Named Plaintiffs and Opt-in Plaintiff are also fair. The Plaintiffs seeking services awards expended substantial efforts prosecuting the case.

72.     Mr. Joefield, who seeks the highest award, has been working at the Queens warehouse for over eight years and has been a font of information. He has met with MSR repeatedly, provided key documents and information concerning SEKO, and provided contact information for many class members, as he has kept in touch with his former colleagues who no longer work at SEKO. Additionally, he came to MSR's office twice to provide information, appeared at the November 30, 2023 conference, and appeared at both of the JAMS mediation sessions. Perhaps most critically, he has personally been responsible for providing contact information for some 45 class members for whom Defendant was unable to provide any contact information—thus having a direct impact on ensuring that these class members will receive payment should they participate in the settlement.

73.     The three additional *Joefield* plaintiffs came to MSR's office, provided MSR with documents and information, and worked with MSR on the drafting of the Amended Complaint.

They have also assisted the parties in obtaining class member contact information for the notice program.

74.     If granted, Plaintiffs' service awards will have a minimal effect on each class member's individual recovery. If the Court denied the service awards, the average award per class member (assuming 168 receive payment) would increase by less than $300, from roughly $4,493.38 to $4,776.12 (those receiving the minimum payment would be unaffected).

**BRIEF BACKGROUND AND EXPERIENCE OF PUTATIVE CLASS COUNSEL**

75.     Menken Simpson & Rozger LLP has been in existence, with various configurations, since 1998. In 2021, the firm changed its name from Beranbaum Menken LLP to Menken Simpson & Rozger LLP.

76.     Currently, MSR is a five-attorney (plus one law graduate) law firm that focuses on representing plaintiffs with a wide variety of employment claims, including claims of individual and class-wide violations of wage and hour laws, discrimination and harassment based on sex, race, disability or age, as well as retaliation, whistleblower, and contract claims. Our firm handles both hourly and contingency fee work.

<u>Scott Simpson</u>

77.     I am a 2008 graduate of the University of Michigan Law School. I was a criminal defense attorney at the Bronx Defenders, a public defense organization, for seven years (three of which I was a supervising attorney) before joining MSR as an associate in October 2015. I was promoted to partner effective January 1, 2018.

78.     My practice at MSR is largely focused on representing Plaintiffs in a wide range of matters, including employment discrimination and wage and hour related matters. Wage and hour class actions are a substantial part of my practice. I am currently litigating several wage-related

class actions in state and federal courts, including *Agudelo et al. v. Recovco et al.*, 22-cv-4004 (JMA) (LGD) (E.D.N.Y.), *Aguirre et al. v. CDL Last Mile Solutions, LLC, et al*., BER-L-001172-23 (Superior Court of New Jersey Law Division), and *Sam, et al. v. Stone Security Service*, *Inc., et al.,* 24-cv-5620 (GHW) (S.D.N.Y.). Along with my colleague, associate Raya F. Saksouk, I recently won an appeal in the New Jersey Appellate Division concerning whether a choice of law clause in an arbitration agreement was enforceable where enforcement would run afoul of New Jersey's public policy. *See Aguirre v. CDL Last Mile Solutions, LLC*, 2024 WL 762467 (N.J. Super. App. Div. Feb. 26, 2024).

79.    In 2018, along with Bruce E. Menken, I successfully tried a collective action case in this district, *Williams, et al., v. EPIC Security Corp., et al*., 15-cv-5610 (AKH) (SDA) (E.D.N.Y.). From 2015 through 2017, along with Mr. Menken, I represented a class of building superintendents in *Bahena et al. v. Park Avenue South Management LLC, et al*., 15-cv-1507 (VSB) (S.D.N.Y.), resulting in a $650,000 settlement. From 2015 until 2022, along with Mr. Menken, my firm was appointed class counsel in *Grottano v. City of New York*, 15-CV-9242(RMB), 2021 WL 5563990 (S.D.N.Y. Nov. 29, 2021), a complex civil rights class action resulting in a total settlement of over $15 million.

80.    In *Williams v. Epic Security Corp*., 358 F.Supp.3d 284 (S.D.N.Y., 2019), Judge Aaron awarded me an hourly rate of $350, noting that my then-$400 per hour was not appropriate at that time because I was not a partner during the vast majority of the case. *See* 15-cv-5610, ECF 199 at 7.

81.    Over five years ago, in October 2019, the New York Comptroller's office approved an hourly rate of $400 for me in the case of *Cojocaru and Haber v. CUNY et al.*, No. 19-cv-5428 (S.D.N.Y.), a gender discrimination case.

82.     As evidenced by the five retainer agreements attached to this declaration as Ex. 5, my current $600/hr rate is what clients routinely pay me.

Bruce E. Menken

83.     Bruce E. Menken is admitted to practice law in the State of New York and a member in good standing in this Judicial District of the United States Federal Courts. He is a partner in the firm of Menken Simpson & Rozger LLP (which, until March 1, 2021, was called Beranbaum Menken LLP) in New York, New York.

84.     Over two decades ago, Mr. Menken founded MSR with his former partner John Beranbaum. He has guided the firm through various configurations. The firm has always maintained its focus on representing employees in both individual and class cases.

85.     Mr. Menken has been practicing law for 36 years. He is a 1986 graduate of Brooklyn Law School and, since 1993, has practiced employment and civil rights law in New York's federal and state courts. He has also litigated and successfully settled class action wage and hour cases in Florida, California, Illinois, and New Jersey.

86.     Mr. Menken has litigated numerous class cases (including a number of wage and hour and prevailing wage cases) including, but not limited to: *Ramos v. SimplexGrinnell LP*., 796 F. Supp. 2d 346 (E.D.N.Y. 2011); *Williams v. Epic Sec. Corp.,* 368 F. Supp. 3d 651 (S.D.N.Y. 2019); *Bahena, et al. v. Park Avenue South Management LLC, et al.*, 15-cv-1507 (VSB) (S.D.N.Y.); *Accardi v. Honeywell Int'l Inc.*, No. 1:16-CV-03861 (SDA), 2018 WL 8221681 (S.D.N.Y. June 28, 2018); *Rodriguez v. SimplexGrinnell LP,* No. 16-cv-9605 (N.D. Ill.); *Tetley v. Johnson Controls Inc.,* 21-CV-3800 (JGK) (S.D.N.Y. June 26, 2023); *Grenawalt v. AT&T Mobility*, No. 11 Civ. 2664 (ALC), 2014 WL 4832318 (S.D.N.Y. Sep. 29, 2014); *Kahler v. County of Rensselaer*, No. 03-CV-1324, 2004 WL 6067128 (N.D.N.Y. 2004); *Mitchell v. County of*

*Clinton*, No. 8:06-CV-00254, 2007 WL 1988716 (N.D.N.Y. Jul. 5, 2007); *Marriott v. County of Montgomery*, 426 F.Supp.2d 1 (N.D.N.Y. 2006); and *Grottano v. City of New York*, 15-CV-9242 (RMB), 2021 WL 5563990 (S.D.N.Y. Nov. 29, 2021).

87.    In 2012, Magistrate Judge Steven M. Gold of the United States District Court for the Eastern District of New York approved a settlement of some of the claims in *Ramos, et al. v. Simplex Grinnell LP*, 09 Civ. 0981 (SMG), a wage and hour class action, including an attorneys' fee award that provided for a $500 hourly fee (without discussion and analysis) for Mr. Menken's work performed in 2011 and 2012.

88.    Also in 2012, in *Clover v. Shiva Realty of Mulberry, Inc., et al*., No. 10 Civ. 1702 (RPP), 2011 WL 1832581 (S.D.N.Y. May 13, 2011), a small multi-plaintiff wage and hour case, District Judge Robert P. Patterson awarded Mr. Menken an hourly rate of $500 (with discussion and analysis).

89.    In 2015, Magistrate Judge Gold approved a further settlement in *Ramos* that provided for a $600 hourly fee (without discussion and analysis) for his work.

90.    In 2019, after Mr. Menken prevailed in an FLSA and NYLL trial, Magistrate Judge Aaron awarded Mr. Menken a $600 hourly rate, expressly citing his vast experience in civil rights cases. *See Williams v. Epic Sec. Corp*., 368 F. Supp. 3d 651, 658 (S.D.N.Y. 2019).

91.    Mr. Menken charges an hourly rate of $750. Numerous clients have retained Mr. Menken on an hourly basis at his $750 per rate, several examples of which are attached to this declaration as Ex. 6.

## Raya F. Saksouk

92.    Raya F. Saksouk joined MSR in September 2019 and is admitted to practice law in the State of New York and a member in good standing in this Judicial District of the United States

Federal Courts. Ms. Saksouk was promoted to Senior Associate in September 2024 and charges an hourly rate of $375.

93.    Ms. Saksouk is a 2019 graduate of New York University School of Law. While in law school, she worked at the New York City Commission on Human Rights, the Brennan Center for Justice, the U.S. Department of Labor, and the Legal Aid Society, advocating for clients on issues ranging from criminal justice reform to housing and employment discrimination.

94.    As a Senior Associate at MSR, Ms. Saksouk works primarily on class action cases and individual civil rights cases, usually involving employment discrimination. She has authored several briefs, including serving as the primary author of substantial summary judgment oppositions in the Southern District of New York, and regularly manages discovery in the firm's litigations. She is litigating (or has recently litigated) numerous wage and hour cases, including: *Fuentes, et al. v. Super Bread II Corp., et al.*, No. 18-cv-6736 (D.N.J.) (*pro hac vice*); *West, et al. v. LaserShip, Inc., et al.*, No. 21-cv-5382 (S.D.N.Y.); *Koku, et al. v. GMA Realty Management LLC, et al.*, No. 23-cv-9233 (E.D.N.Y.); and *Bartlett, et al. v. Shubert Organization, et al.*, No. 654022/2023 (N.Y. Cty. Sup. Ct.).

95.    Along with Mr. Simpson, she represents the plaintiffs and putative class in *Aguirre et al v. CDL Last Mile Solutions, LLC, et al.*, BER-L-001172-23, Superior Court of New Jersey Law Division, in which she successfully defeated a motion to compel arbitration at the trial court level, and was the primary drafter of plaintiffs' ultimately successful opposition on appeal (the trial court's decision was upheld, *see Aguirre v. CDL Last Mile Solutions, LLC*, 2024 WL 762467 (N.J. Super. App. Div., 2024)).

<u>Brenna Rabinowitz</u>

96.     Brenna Rabinowitz is Of Counsel to MSR (from 2021 until September 2024, she was Senior Associate) and is admitted to practice law in the State of New York and a member in good standing in this Judicial District of the United States Federal Courts. She joined MSR as an associate attorney in 2018 after graduating *cum laude* from the University of Pennsylvania Law School in 2016, working for a year as an Associate at multinational law firm Freshfields Bruckhaus Deringer LLP, and clerking for United States District Judge A. Richard Caputo in the Middle District of Pennsylvania.

97.     Since joining Menken Simpson & Rozger LLP's predecessor firm Beranbaum Menken LLP in 2018, Ms. Rabinowitz has worked on dozens of employment cases, where she has been responsible for handling discovery, motions, and pleadings, as well as taking and defending depositions.

98.     Ms. Rabinowitz has specifically worked on the firm's wage and hour cases, including *Rodriguez v. SimplexGrinnell*, 16-cv-9605 (N.D. Ill.), a prevailing wage collective action on behalf of employees performing testing, inspection, and programming of fire alarm and sprinkler systems, and *Huggins v. Wiener, et al.*, 18-cv-1037 (S.D.N.Y.), where she was the lead author of the plaintiffs' successful motion for conditional certification of a collective of building superintendents in an overtime and minimum wage action against a real estate company.

99.     Ms. Rabinowitz charges an hourly rate of $450.

<u>Edwin Gonzalez</u>

100.    Edwin Gonzalez has been MSR's Office Manager since 2012, and has worked as a legal assistant and/or office manager in law firms since 2008. Mr. Gonzalez is a skilled jack-of-

all-trades who is responsible for a wide array of the firm's administrative, operations, and case support needs.

101.    From 2015 to 2022, Mr. Gonzalez was a key member of the legal team that obtained an over $15 million settlement against the City of New York on behalf of visitors to NYC correctional facilities who had been unlawfully invasively searched.

102.    Plaintiffs ask the Court to approve an hourly rate of $100 for his work on this case.

### Attorneys' Fees and Costs

103.    In summary, Plaintiffs ask the Court to use hourly rates of $600 for Scott Simpson; $750 for Bruce E. Menken; $375 for Raya F. Saksouk; $450 for Brenna Rabinowitz; and $100 for Edwin Gonzalez, when considering whether the proposed settlement and attorney's fees are fair and reasonable under Rule 23(e)(2)(C)(iii).

104.    Using these rates, and the rates for Ms. Stillman as identified in her accompanying Declaration, MSR and Ms. Stillman have a collective lodestar of $282,470.67, with many more hours still to be expended. MSR and LS's costs total $11,288.17.

105.    The lodestar is based on 584.65 attorney hours and 23.5 administrative support hours, as set forth in this chart and in the parties' billing records:

| Name | Position | Years of Experience | Rate | Hours | Fees |
|------|----------|---------------------|------|-------|------|
| Scott Simpson | Attorney | 16 | $600 | 199.6 | $119,760.00 |
| Raya Saksouk | Attorney | 5 | $375 | 217.9 | $81,375 |
| Bruce Menken | Attorney | 39 | $750 | 32.9 | $24,675.00 |
| Brenna Rabinowitz | Attorney | 8 | $400 | 54.1 | $21,640.00 |
| Edwin Gonzalez | Office Mgr | 16 | $100 | 23.5 | $2,350.00 |
| Lina Stillman | Attorney | 14 | $350/400 | 80.15 | $32,670.67 |
| **Totals** | | | | **608.15** | **$282,470.67** |

**Fairness of the Settlement**

106.    I have assessed the risks and inherent delays if Plaintiffs were to continue with this litigation. Based on my and my firm's experience as briefly set forth above, I believe that it is reasonable to expect that the case could take two years to litigate through to a final lower court judgment and an appeal, at a cost in the range of hundreds of thousands of dollars in legal fees and costs. It is my opinion, based on the experience I briefly detailed above, that the proposed settlement is fair, reasonable and adequate.

107.    It is also my opinion, based on the experience I briefly detailed above, that the proposed settlement is fair, reasonable and adequate. It was reached after arm's-length negotiations and with the assistance of an experienced mediator, Mr. Levy. This opinion is based upon a complete assessment of the strengths and weaknesses of the case, which is founded on extensive discovery and investigative fact-finding.

108.    I declare under penalty of perjury under the laws of New York and the United States that the foregoing is true and accurate.


Dated: March 11, 2025
        New York, New York


                                        *s/ Scott Simpson*
                                        Scott Simpson
                                        MENKEN SIMPSON & ROZGER LLP
                                        80 Pine St., 33rd Fl.
                                        New York, NY 10005
                                        Tel.: 212-509-1616
                                        Fax: 212-509-8088
                                        ssimpson@nyemployeelaw.com

                                        *Attorneys for Plaintiff*
                                        *and the Proposed Class*